UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JANE SMITH, *et al.*,

                                        Plaintiffs,

           -against-                                        5:21-CV-0035 (LEK/ATB)

KATHY HOCHUL, as Governor of the
State of New York, *et al.*,

                                        Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiffs Jane Smith, Jill Park, Mary Doe, Ann Jones, and Dr. Amy Moe commenced the

present action, challenging certain amendments and provisions of the New York Reproductive

Health Act ("RHA"). Dkt. No. 1 ("Complaint"). Simultaneously, Plaintiffs Doe and Jones each

filed motions to be appointed as next friend under Rule 17(c)(2) of the Federal Rules of Civil

Procedure. Dkt. Nos. 2 ("Doe Motion"), 8 ("Jones Motion"). Presently before the Court is

Defendants' motion to dismiss the Complaint. Dkt. Nos. 35 ("Motion to Dismiss"); 35-1

("Defendants' Memorandum"); 44 ("Response"); 47 ("Reply"). The Court has already denied the

Doe Motion and Jones Motion. See Dkt. No. 51.

As the Supreme Court has observed, "[m]en and women of good conscience can disagree,

and we suppose some always shall disagree, about the profound moral and spiritual implications

of terminating a pregnancy," Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833,

850, 112 S. Ct. 2791, 2806, 120 L. Ed. 2d 674 (1992). Here, where the challenged law relates to

termination of a pregnancy through violence against a pregnant person, few would disagree about

the wrongfulness of such violence. However, profound disagreements still exist with regard to the most appropriate disincentives and punishments for such conduct. The democratically elected state government of New York has spoken on this issue and, absent a conflicting provision of federal law or of the United States Constitution, this Court may not intervene.

For the following reasons, Defendants' motion to dismiss the Complaint is granted.

## II.      BACKGROUND

### A.  Factual History

The following factual allegations are assumed to be true. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 76 (2d Cir. 2015).

#### 1.  The Parties

Plaintiff Jane Smith is an adult who resides in the Greater New York City area, and was in the early stages of pregnancy with her third child when she experienced intimate partner violence in late 2019. Compl. ¶¶ 28, 71–72. On June 2, 2020, Plaintiff Smith gave birth to a male child. Id. ¶ 73. Plaintiff seeks to assert her own claims against Defendants, as well as those on behalf of two classes of women: (1) women who are subjected to a greater risk of violence as a result of the RHA's repeal and amendment of the N.Y. Penal Law §125.00, 125.40 and 125.45 ("Violence Against Women Class"); and (2) women who have experienced the murder or attempted murder of their viable unborn child and now have no legal recourse or redress for that crime as a result of the passage of the RHA's repeal and amendment of the N.Y. Penal Law §125.00, 125.40 and 125.45 ("Women Lacking Recourse Class"). Id. ¶ 28.

Plaintiff Jill Park is an adult who resides in the Western New York area, and in late 2019 and early 2020, she was pregnant with her first child when she experienced intimate partner

2

violence and threats from her partner's family. Id. ¶ 29. On April 29, 2020, Plaintiff Park

prematurely gave birth to a female child. Id. ¶ 91. She too is seeking to assert her claims against

Defendants, as well as those on behalf of the Violence Against Women Class and Women

Lacking Recourse Class. Id. ¶ 29.

Plaintiff Mary Doe previously sought to be appointed as a legal representative, guardian

ad litem, or next friend, pursuant to Federal Rules of Civil Procedure Rule 17(c)(2), for the

limited purposes of representing in this action viable unborn children who are (1) subject to

being aborted due to Public Health Law §2599-BB.1; or (2) who are wanted, but killed at the

hands of a harm-causing individual and have no right to redress for their murder (collectively, the

"Viable Unborn Children Class") as a result of the modification of Penal Law §125 by the RHA.

Id. ¶ 30.

Plaintiff Ann Jones previously sought to be appointed as a legal representative, guardian

ad litem, or next friend, pursuant to Federal Rules of Civil Procedure Rule 17(c)(2), for the

limited purposes of representing in this action children who survive abortion ("Abortion

Survivors Class"). Id. ¶ 31.

Plaintiff Dr. Amy Moe is a physician licensed since 1989 to practice medicine in the State

of New York. Id. ¶ 32. Plaintiff Dr. Moe is asserting her own claims, and also seeks to represent

similarly situated physicians in this action (the "Physician Class") who are unable to fulfill their

legal and professional obligation to inform and counsel pregnant patients regarding what medical

circumstances allow post-viability abortions, and what healthcare professionals are authorized to

provide such abortions. Id.

Originally, then-Governor Andrew Cuomo was listed as a defendant. Id. ¶ 33. However, Defendant Governor Kathy Hochul, the current Governor of the State of New York, was automatically substituted as a party pursuant to Fed. R. Civ. P. 25.

Defendant Letitia James is the Attorney General of the State of New York. Id. ¶ 34. Defendant Howard A. Zucker is the Commissioner of Health for New York State. Id. ¶ 35. Defendant Deirdre Astin is Deputy Director, Division of Hospitals and Diagnostic and Treatment Centers, New York State Department of Health. Id. ¶ 36. Defendant Deputy Commissioner Sarah Benson directs the Office of Professional Discipline at the New York State Department of Education. Id. ¶ 37. Defendant Arthur S. Hengerer is the Chair of the New York State Department of Health Office of Professional Medical Conduct. Id. ¶ 38. Defendant Donna Frescatore serves as the New York Medicaid Director. Id. ¶ 39. Finally, Defendant Sheila J. Poole is the Commissioner of the New York State Office of Children and Family Services. Id. ¶ 40.

### 2. *New York Reproductive Health Act*

In January 2019, the Governor of New York State signed the RHA into law. Id. ¶ 47. Among many other things, the RHA added Article 25-A of the Public Health Law and decriminalized abortion. Id. ¶¶ 48–66.

Article 25-A specifically states the following:

N.Y. Public Health Law § 2599–AA Policy and purpose.

The legislature finds that comprehensive reproductive health care is a fundamental component of every individual's health, privacy and equality. Therefore, it is the policy of the state that:

1. Every individual has the fundamental right to choose or refuse contraception or sterilization.

2. Every individual who becomes pregnant has the fundamental right to choose to carry the pregnancy to term, to give birth to a child, or to have an abortion, pursuant to this article.

3. The state shall not discriminate against, deny, or interfere with the exercise of the rights set forth in this section in the regulation or provision of benefits, facilities, services or information.

N.Y. Public Health Law § 2599–BB. Abortion

1. A health care practitioner licensed, certified, or authorized under title eight of the education law, acting within his or her lawful scope of practice, may perform an abortion when, according to the practitioner's reasonable and good faith professional judgment based on the facts of the patient's case: the patient is within twenty-four weeks from the commencement of pregnancy, or there is an absence of fetal viability, or the abortion is necessary to protect the patient's life or health.

2. This article shall be construed and applied consistent with and subject to applicable laws and applicable and authorized regulations governing health care procedures.

Id. ¶ 48 (citations omitted).

Furthermore, the RHA eliminated abortion as a crime and removed from the homicide statutes the qualifying act of causing the death of "an unborn child with which a female has been pregnant for more than twenty-four weeks." Id. ¶¶ 50–51 (citing N.Y. Penal Law §§ 125.00, 125.05).

## III.   LEGAL STANDARD

### A.  Rule 12(b)(1) Motion to Dismiss

When a defendant "moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint

for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." United States ex rel. Kreindler & Kreindler v. United Tech. Corp., 985 F.2d 1148, 1155–56 (2d Cir. 1993) (internal quotation marks and citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that [they have] standing to sue." Kiryas Joel Alliance v. Village of Kiryas Joel, 495 F. App'x 183, 188 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted). In considering a motion to dismiss under Rule 12(b)(1), a court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. Buday v. N.Y. Yankees P'Ship, 486 F. App'x 894, 896 (2d Cir. 2012). Plaintiffs, as the parties asserting subject matter jurisdiction, bear the burden of establishing their standing as the proper parties to bring this action. See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc., 697 F.3d 59, 65 (2d Cir. 2012).

### B.  Article III Standing

Standing is an "essential aspect" of the limits of federal judicial power under Article III of the Constitution, which authorizes federal courts to decide only actual "Cases" or "Controversies." Hollingsworth v. Perry, 570 U.S. 693, 704 (2013). To have standing to invoke the power of a federal court, a litigant must prove that: (1) she "has suffered a concrete and particularized injury"; (2) the injury "is fairly traceable to the challenged conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision." Id. (citing Lujan v. Defenders

of Wildlife, 504 U.S. 555, 560–61 (1992)); see also Lujan, 504 U.S. at 560 (describing these three elements as "the irreducible constitutional minimum of standing"). "To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way. He must possess a direct stake in the outcome of the case." Hollingsworth, 570 U.S. at 705 (citations and quotation marks omitted). A litigant "raising only a generally available grievance about government-claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large-does not state an Article III case or controversy." Lujan, 504 U.S. at 573–74. In the class action context, the Second Circuit has noted that "only one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d Cir. 2007).

### C.  Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of

[the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

## IV.   DISCUSSION

### A.  First Cause of Action - Substantive Due Process Claim

Plaintiffs Smith and Park allege that Penal Law § 125.05, as amended by the RHA, violates their, and the Violence Against Women and Women Lacking Recourse Classes' substantive due process right to freedom from state-created threats of violence guaranteed by the Fourteenth Amendment of the United States Constitution. Compl. ¶ 243.

#### 1.  Plaintiffs Smith's and Park's Standing

Defendants argue that Plaintiffs lack standing to challenge Penal Law § 125.05 because they have not suffered an injury in fact, Defs.' Mem. at 9, while Plaintiffs disagree, Resp. at 1–7. Defendants' main contention is that Plaintiffs are making a pre-enforcement challenge to a criminal statute, without alleging fear of a criminal prosecution. Defs.' Mem. at 10. The Court disagrees with Defendants and denies the Rule 12(b)(1) motion to dismiss.

Defendants' reliance on Cayuga Nation v. Tanner, 824 F.3d 321 (2d Cir. 2016) is misplaced. "When a plaintiff 'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible

threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" Cayuga Nation v. Tanner, 824 F.3d 321, 331 (2d Cir. 2016) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). If the State of New York decided to criminalize abortions and Plaintiffs wanted to have abortions, then Cayuga Nation would be applicable. However, Cayuga Nation is not applicable where the State decriminalized an action, and Plaintiffs are looking to challenge the decriminalization.

Instead, the present situation is analogous to parties challenging administrative actions that decriminalize conduct that causes injury to the parties. See Nat. Res. Def. Council v. EPA, 755 F.3d 1010, 1017 (D.C. Cir. 2014) ("It is well-established that standing will lie where a plaintiff demonstrates that the challenged agency action authorizes the conduct that allegedly caused the plaintiff's injuries, if that conduct would allegedly be illegal otherwise. . . .") (internal quotation marks, alterations, and citations omitted). In Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior, 397 F. Supp. 3d 430, 440 (S.D.N.Y. 2019), plaintiff States were challenging an opinion by the Department of Interior that decriminalized the incidental killing of migratory birds. The court there found an injury was present because "the lower the potential cost of incidentally killing a migratory bird, the more likely private actors are to weigh the pros and cons of activities in which they wish to engage that incidentally kill migratory birds in favor of engaging in those activities." Id.

Here, Plaintiffs do sufficiently allege that they were victimized while pregnant. Compl. ¶¶ 28–29, 71, 90. The RHA eliminated criminal penalties for abortions, which may have made it more likely for potential wrongdoers to weigh the pros and cons of their actions in favor of

9

engaging in violence. Nat. Res. Def. Council, Inc., 397 F. Supp. 3d at 440. In other words, at this stage of the case, the logic follows that the RHA reduced disincentives for violence against pregnant women. Finally, it makes no difference in this case that the named Plaintiffs were able to give birth. Were it not for the RHA, the violence Plaintiffs experienced could have potentially been charged as an attempt crime. See, e.g., In re Mercedes K., 933 N.Y.S.2d 691, 693 (2nd Dep't 2011) ("attempted abortion in the second degree is legally cognizable."). As such, the Court does not find that the injury Plaintiffs allege is merely hypothetical. Plaintiffs have sufficiently alleged that they suffered an injury-in-fact because of Defendants' repeal of New York's fetal homicide law.

Although Defendants do not argue traceability and redressability, the Court finds that they too are met. At the pleading stage, Plaintiffs' burden is to allege facts "showing that third parties will likely react in predictable ways" to the RHA's elimination of criminal penalties. See Dep't of Com. v. New York, 139 S. Ct. 2551, 2566 (2019). It is well-settled that "[f]or standing purposes, petitioners need not prove a cause-and-effect relationship with absolute certainty; substantial likelihood of the alleged causality meets the test." Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin., 894 F.3d 95, 104 (2d Cir. 2018) (citing Competitive Enter. Inst. v. NHTSA, 901 F.2d 107, 113 (D.C. Cir. 1990)). Taking Plaintiff's allegations as true, there is a "substantial likelihood" that by eliminating the fetal homicide law, the RHA reduced disincentives for violence against pregnant women, making it more likely that third parties will inflict violence against pregnant women. Finally, redressability is met because it is plausible that declaring the RHA's various changes to N.Y. Penal Law § 125 to be unlawful would reduce that risk.

2.  *Failure to State a Claim*

The Due Process Clause provides, "[N]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). "[I]n certain limited circumstances[, however,] the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." Id. at 198. One of these circumstances, which the Second Circuit has recognized, is the state-created danger exception. See Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir. 2009) ("the Due Process Clause may be violated when police officers' affirmative conduct—as opposed to passive failures to act—creates or increases the risk of private violence, and thereby enhances the danger to the victim.") (emphasis in original). "The state-created danger exception requires some form of affirmative, rather than passive, conduct on the part of a government actor that 'communicates, explicitly or implicitly, official sanction of private violence.'" Tufaro v. City of New York, No. 12-CV-7505, 2014 WL 4290631, at *3 (S.D.N.Y. Aug. 28, 2014) (quoting Okin, 577 F.3d at 429). "Such communication is, in fact, a necessary prerequisite to condoning such conduct." Bunn v. City of Poughkeepsie, No. 10-CV-2297, 2012 WL 1621563, at *5 (S.D.N.Y. May 9, 2012) (internal quotation marks omitted). Moreover, the Second Circuit has limited application of this doctrine to situations where "a third party's criminal behavior harmed the plaintiff after a government actor—always a law enforcement officer—enhanced or created the opportunity for the criminal act through some interaction or relationship with the wrongdoer."

11

Lombardi v. Whitman, 485 F.3d 73, 80 (2d Cir. 2007); see also Leder v. Am. Traffic Sols., Inc.,

630 F. App'x 61, 63 (2d Cir. 2015).

The Court begins by recognizing that there is no clear line between "affirmative" and

"passive" conduct. See Pena v. DePrisco, 432 F.3d 98, 109–10 (2d Cir. 2005). Here, however,

the Court easily finds that Plaintiffs have failed to adequately allege that Defendants' actions fall

under the ambit of this state-created danger exception. Specifically, there is nothing in the

Complaint alleging that any of the Defendants communicated an official sanction of private

violence. In their Response, Plaintiffs point to the fact that the RHA was widely publicized by

state officials and the former Governor directed all of New York's landmarks to be lit in pink to

celebrate the RHA. Resp. at 5. The Court, however does not find this to amount to affirmative

conduct because there was no "interaction or relationship with the wrongdoer." Lombardi, 485

F.3d at 80; see also Bunn, 2012 WL 1621563, at *5 ("Here, however, there is neither an

allegation nor evidence that the police condoned [wrongdoer's] behavior, or had any

communication with [wrongdoer] whatsoever between the time the order of protection was

issued and the time that [victim] was shot"); see also Coleman v. Cty. of Suffolk, 174 F. Supp.

3d 747, 766 (E.D.N.Y. 2016), aff'd, 685 F. App'x 69 (2d Cir. 2017) ("The Court cannot infer

that the police communicated a condoning of [wrongdoer's] conduct where '[p]laintiff[ ] offer[s]

no evidence to support the notion that [wrongdoer] was aware of' the officers' comments or that

he 'inferred from [them] a green light to escalate' his actions. . . ."). In addition, Plaintiffs fail to

allege that the Defendants condoned violence against pregnant women. Without anything more, a

state official who publicizes a legislative victory to the general public does not engage in the type

of action that falls under the ambit of this state-created danger exception. Thus, the motion to dismiss is granted with respect to Count I.

**B.  Second Cause of Action - Right to Legal Redress**

Next, Plaintiffs Smith and Park allege that Penal Law § 125.05, as amended by the RHA, violates their, and the Women Lacking Recourse Classes' First Amendment right to legal redress. Compl. ¶¶ 244–254.

*1.  Plaintiffs Smith and Park's Standing*

For largely the same reasons as explained in section IV(A)(1), Smith and Park have established standing, and Defendants' 12(b)(1) motion to dismiss is denied.

*2.  Failure to State a Claim*

The First Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I (emphasis added). "The Supreme Court has described the right to petition government for redress of grievances as 'among the most precious of the liberties safeguarded by the Bill of Rights.'" Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) (quoting United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967)). However, the right to petition is limited to situations where a plaintiff "was somehow denied the opportunity to redress a constitutional violation at the hands of a governmental official." Price v. Hasly, No. 04-CV-0090S, 2004 WL 1305744, at *2 (W.D.N.Y. June 8, 2004). Plaintiffs' claim is that the RHA prevents prosecutors and courts from "from punishing violent acts that kill a viable unborn child." Compl. ¶¶ 244–254. This is similar to cases where a plaintiff is prevented from

filing criminal charges. See Price, 2004 WL 1305744, at *2 ("[H]is claim is that [he] was somehow prevented from filing criminal charges against another inmate who allegedly assaulted him. This claim is simply not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual.") (citing Leeke v. Timmerman, 454 U.S. 83 (1981)); see also Chandler v. Carroll, No. 11-CV-108, 2011 WL 5419770, at *6 (D. Vt. Nov. 9, 2011) (finding that there was no constitutional violation where plaintiff accused defendant "of denying him his right to petition the government for redress in the form of a criminal complaint."). Under the First Amendment, the Court sees no difference between a state official preventing the filing of criminal charges and the absence of a state law authorizing such criminal charges. In neither case is the First Amendment violated because a private citizen does not have a constitutional right to bring a criminal complaint against another individual.

Instead, Plaintiffs argue that the present case is similar to Romer v. Evans, 517 U.S. 620 (1996). Resp. at 18–19. Specifically, "[i]n eliminating this protection, like Colorado voters in Romer, Defendants have made it impossible to criminally punish those who deprive mothers of the care and custody of their children by killing the children, and deprive the children of their very lives." Id. at 19. In Romer, in response to Colorado municipalities passing ordinances to prohibit discrimination on the basis of sexual orientation, Colorado voters adopted an amendment to the state constitution via a referendum that "prohibit[ed] all legislative, executive or judicial action at any level of state or local government designed to protect the named class, a class we shall refer to as homosexual persons or gays and lesbians." 517 U.S. at 624. The Supreme Court invalidated the amendment under the Equal Protection Clause because it made

14

gay individuals "unequal to everyone else" by "imposing a broad and undifferentiated disability on a single named group." Id. at 632, 635.

Although Plaintiffs acknowledge that Romer was an equal protection case, they seek to apply its rationale by arguing "that a part of the violation of plaintiffs' rights is the denial of judicial relief for any harms suffered." Resp. at 19. Defendants disagree, contending that even if Romer is applicable here, there are still criminal laws that can protect Plaintiffs and nothing prevents Plaintiffs from lobbying the Legislature to amend the RHA. Reply at 8.

The Court finds Romer inapplicable in the context of a right to redress claim. Plaintiffs have not provided any case law support for their novel theory. Moreover, the Court does not find the present situation analogous to Romer. It is true that under prior state law "a criminal assailant could be charged with the murder of an unborn child with whom a woman had been pregnant for more than twenty-four weeks." Compl. ¶ 58. Now that the RHA eliminated criminal penalties for abortion crimes, Plaintiffs have lost that particular legal protection. See, e.g., State v. Etchison, 188 Neb. 134, 137 (1972) ("The primary function of the criminal law is to protect individuals and society from the depredations of the criminally bent."); United States v. Mancuso, 420 F.2d 556, 559 (2d Cir. 1970) ("The primary purpose of law, and the criminal law in particular, is to conform conduct to the norms expressed in that law."). Plaintiffs argue that they experienced a denial of judicial relief for any harms suffered. Resp. at 19. However, pregnant mothers are still protected under other criminal statutes (e.g., homicide and assault) that still provide a deterrent effect. Specifically, in the stories that Plaintiffs cite to in their Complaint, the wrongdoers were convicted of other criminal murder or assault charges besides under the then-fetal homicide law, and after the RHA went into effect, wrongdoers still face these other criminal charges. Compl. ¶

236. It is not accurate to say, as Plaintiff claims, that the RHA "made it impossible to criminally punish those who deprive mothers of the care and custody of their children by killing the children[.]" Resp. at 19.[1]

In Romer, the amendment "prohibit[ed] all legislative, executive or judicial action at any level of state or local government designed to protect the named class." 517 U.S. at 624. This is not the case here. Plaintiffs did not experience a similar wholesale denial of judicial relief. Criminal charges have been brought and are still brought against assailants who attack pregnant women. Furthermore, nothing prevents Plaintiffs from lobbying the state legislature to repeal the RHA. Thus, Romer is not applicable and Plaintiffs have failed to state a claim for their right to redress claim.

### C. Third, Fourth, Fifth, and Sixth Causes of Action

The Court can easily dispense with the next four causes of action. They each depend on next friend standing for Plaintiffs Mary Doe and Ann Jones. See Compl. ¶¶ 255, 279, 290, 298. However, the Court has already declined the two appointments to serve as next friend. See Dkt. No. 51. Thus, Mary Doe and Ann Jones lack standing to proceed in this Court. See Whitmore v. Arkansas, 495 U.S. 149, 163–66 (1990). Accordingly, Defendant's 12(b)(1) motion to dismiss is granted with respect to Counts III, IV, V, and IV.

---

[1] Plaintiffs also state that the RHA made it impossible to criminally punish those who "deprive the [viable unborn] children of their very lives." Resp. at 19. The Court finds this a troubling allegation. However, this allegation is relevant to Plaintiffs' Fourth Cause of Action, which addresses legal redress for the Viable Unborn Children Class, Compl. at 66, and not Plaintiffs' Second Cause of Action, which addresses legal redress for Plaintiffs Jane Smith, Jill Park, and the Women Lacking Recourse Class, id. at 58. Plaintiffs' Fourth Cause of Action is dismissed for lack of standing. Infra Section IV(C).

### D. Seventh Cause of Action - Void for Vagueness

Finally, Plaintiff Dr. Amy Moe, on behalf of herself and the Physician Class, allege that two terms of Section 2599-BB.1 of New York Public Health Law are void for undue vagueness. Compl. ¶¶ 319–352.

#### 1. Plaintiff Moe's Standing

After the parties submitted their original briefing, the Supreme Court issued California v. Texas, 141 S. Ct. 2104 (2021), which found that parties did not have standing to attack an unenforceable statutory provision. Since both parties agreed that the RHA does not have an enforcement mechanism, the Court instructed the parties to file supplemental briefing addressing how California v. Texas applies to the standing of Dr. Moe and the Physician Class. See Dkt. Nos. 50; 52 ("Plaintiffs' Sur-Reply"); 53 ("Defendants' Response to Plaintiffs' Sur-Reply").

Upon reviewing the parties' briefing, the Court finds that the facts present are not similar to California. In California, the plaintiffs could not "point[] to any way in which the defendants, the Commissioner of Internal Revenue and the Secretary of Health and Human Services, will act to enforce [the statutory provision]." 141 S. Ct. at 2114. Since the plaintiffs could not show "how any other federal employees could do so either[,]" "they have not shown that any kind of Government action or conduct has caused or will cause the injury they attribute to [the statutory provision]." Id. The unenforceable statutory language alone was not sufficient to establish standing. Id. at 2115. The Supreme Court concluded that "the plaintiffs in this suit failed to show a concrete, particularized injury fairly traceable to the defendants' conduct in enforcing the specific statutory provision they attack as unconstitutional." Id. at 2120.

17

By contrast, Plaintiffs here sufficiently show that Government action will cause such injury attributable to Section 2599-BB.1 of New York Public Health Law. In their Complaint, Plaintiff Dr. Moe alleges that Section 2599-BB.1 "subjects her to professional and criminal sanctions[.]" Compl. § 329; see also id. § 327 (citing N.Y. Penal Law §§ 240.70, 240.71, 240.72, 240.73) and § 328 ("Plaintiff Dr. Moe must practice medicine consistent with all other regulatory and legal or licensure requirements"). Defendants argue that "the harms alleged by Dr. Moe do not result from the operation or enforcement of the challenged statute." Defs.' Resp. to Pls.' Sur-Reply at 3. The Court disagrees. Notably, Section 2599-BB.2 provides that "[t]his article [the RHA] shall be construed and applied consistent with and subject to applicable laws and applicable and authorized regulations governing health care procedures." N.Y. Pub. Health Law § 2599-BB. Unlike in California, Section 2599-BB.1 is not just unenforceable statutory language. Section 2599-BB.2 makes clear that the RHA (which includes Section 2599-BB.1) will be implemented consistent with applicable laws and regulations governing health care procedure. Even without a specific enforcement mechanism in the statute, it is plausible to construe Section 2599-BB.2 as allowing Defendants to enforce Section 2599-BB.1 through either civil or criminal law.

Although California does not apply here, the Court ultimately finds that Plaintiff Dr. Moe lacks standing. "When a plaintiff 'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" Cayuga Nation, 824 F.3d at 331 (quoting Babbitt, 442 U.S. 289, 298 (1979)). "To sufficiently allege standing on his

preenforcement claim, Plaintiff must therefore allege both a concrete intention to violate the law and the credible threat of prosecution if he were to do so." Adam v. Barr, No. 18-CV-2106, 2019 WL 1426991, at *3 (S.D.N.Y. Mar. 29, 2019), aff'd, 792 F. App'x 20 (2d Cir. 2019), cert. denied, 140 S. Ct. 1119, 206 L. Ed. 2d 186 (2020).

The first term of Section 2599-BB.1 of New York Public Health Law that Plaintiff Dr. Moe identifies as ambiguous is "health care practitioner." Compl. ¶ 295. Plaintiff Dr. Moe alleges that the RHA authorizes a "health care practitioner" to perform abortions, but that there is no definition of "health care practitioner." Id. ¶¶ 332–33. As a result of this failure to define who is authorized to perform abortions, she is "unsure as to how to respond to her patients' questions or concerns about the qualifications or competency of any particular abortion provider or facility[.]" Id. ¶ 337. Accordingly, RHA "impeded her ability to fully and appropriately answer patient questions, address patient concerns, or provide full and complete assessments on post-abortive women." Id. ¶ 339.

The second term of Section 2599-BB.1 of New York Public Health Law, Plaintiff Dr. Moe identifies as ambiguous is "necessary to protect a patient's life or health." Id. ¶ 156. Specifically, she alleges that the law fails to define the circumstances under which an abortion after twenty-four weeks would be "necessary to protection a patient's life or health." Id. ¶ 347. Neither the RHA or the Public Health Law defines "health." Id. ¶ 348. Plaintiff Dr. Moe points to at least three possible definitions of "necessary to protect the patient's . . . health" and her "ability to fully and appropriately answer her patients' questions or address their concerns is hampered by the lack of clarity of the RHA." Id. ¶¶ 349–50.

19

Here, Plaintiff Dr. Moe has not sufficiently alleged a concrete intention to violate the law. Notably, Dr. Moe does not allege "'concrete plans' to perform, in the near future, the conduct that officials would consider illegal." Jones v. Schneiderman, 101 F. Supp. 3d 283, 291 (S.D.N.Y. 2015) (citing Lujan, 504 U.S. at 564). Instead, a fair reading of the allegations is that the RHA is confusing and Dr. Moe cannot accurately answer questions presented by her patients. Being unsure is not the same as articulating a concrete plan. See Kearns v. Cuomo, 415 F. Supp. 3d 319, 329 (W.D.N.Y. 2019), aff'd, 981 F.3d 200 (2d Cir. 2020) (collecting cases on the concrete plan requirement). There is nothing to indicate that Dr. Moe intended to follow a specific definition of "health care practitioner" that could violate the RHA. In other words, Dr. Moe has provided the Court with no information at all regarding her intentions now that the RHA has gone into effect. Id. at 330. Additionally, Dr. Moe provided three possible definitions of "necessary to protect the patient's . . . health," but she has not articulated which definition she intended to follow or how it could be considered illegal. Dr. Moe's confusion and uncertainty on how to proceed is understandable[2], but to demonstrate standing, she must show some concrete intention on her part to violate civil or criminal laws.

---

[2]  The Court notes that the current Governor has directed the Department of Health "to take immediate action to develop and widely distribute modern and comprehensive provider guidance on the right to provide abortion care[.]" Press Release, *Governor Hochul Announces Agenda to Affirm Abortion Rights in New York; Stands With Senator Gillibrand to Fight for Reproductive Rights* (September 13, 2021), https://www.governor.ny.gov/news/governor-hochul-announces-agenda-affirm-abortion-rights-n ew-york-stands-senator-gillibrand; see also Dark Storm Indus. LLC v. Cuomo, 471 F. Supp. 3d 482, 488 n.1 (N.D.N.Y. 2020) (taking judicial notice of a NYS government website) (Kahn, J.). This guidance may provide many of the answers that Dr. Moe is seeking, and may potentially moot her claims.

Because the Court finds that Plaintiff Dr. Moe failed to allege a concrete intention to violate the law, the Court need not determine whether there was a credible threat of prosecution. Thus, Dr. Moe has failed to meet her burden to establish standing for Counts VII(A) and VII(B).

## V.    CONCLUSION

Termination of pregnancy is a deeply fraught and contested issue, and few can doubt the wrongfulness of terminating a pregnancy through violence against a pregnant person. Here, the state legislature has chosen to forgo a particular approach to punishing such wrongful conduct, and it is not a court's role to substitute its moral judgements for those of the legislature.

Accordingly, it is hereby:

**ORDERED**, that the Motion to Dismiss under 12(b)(1) (Dkt. No. 35) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Plaintiffs Mary Doe, Ann Jones, and Dr. Amy Moe. The motion is **DENIED** as to Plaintiffs Jane Smith and Jill Park; and it is further

**ORDERED**, that the Motion to Dismiss under 12(b)(6) (Dkt. No. 35) against Plaintiffs Jane Smith and Jill Park is **GRANTED**; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk is directed to close this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       October 26, 2021
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge