UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JANE SMITH, *et al.*,

                    Plaintiffs,

      -against-                            5:21-CV-0035 (LEK/ATB)

KATHY HOCHUL, as Governor of the State
of New York, *et al*.,

                    Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On January 12, 2021, Plaintiffs filed suit against the State of New York and several of its officials (collectively, "Defendants"), challenging certain amendments and provisions of the New York Reproductive Health Act ("RHA"). Dkt. No. 1 ("Original Complaint"). On October 26, 2021, the Court dismissed all seven causes of action from the Original Complaint, Dkt. No. 59 ("Dismissal Order"), and entered judgment in Defendants' favor, Dkt. No. 60 ("Judgment").

Now before the Court is a set of post-judgment motions filed by Plaintiffs in the wake of Dobbs v. Jackson Women's Health Organization, 142 S. Ct. 2228 (2022), seeking to reopen the Judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b); and to file an amended complaint pursuant to Rule 15(a)(2) (collectively, the "Post-Dobbs Motions"). See Dkt. No. 80 ("Notice of Motion"); see also Dkt. No. 83 ("September 2022 Order") at 5–7, 12 (construing Plaintiff's "Substitution Motion," Dkt. No. 80-1, "as a renewed motion to reopen the Judgment under Rule 59(e)"). For the reasons set forth below, the Court denies the Post-Dobbs Motions, as well as the related motions to appoint next friend representatives, Dkt. Nos. 61-5 to -6, and to file anonymously, Dkt. Nos. 61-7 to -10.

## II.   BACKGROUND

On January 12, 2021, Plaintiffs filed suit against Defendants, challenging certain amendments and provisions of the RHA. See Original Compl. Plaintiffs raised seven counts:

1. A Fourteenth Amendment substantive due process claim on behalf of Jane Smith, Jill Park,[1] and other similarly situated women, alleging that Penal Law § 125.05, as amended by the RHA, violates their right to freedom from state-created threats of violence, see Original Compl. ¶¶ 238–43;

2. A First Amendment claim on behalf of Smith, Park, and other similarly situated women, alleging that Penal Law § 125.05, as amended by the RHA, violates their right to legal redress, see id. ¶¶ 244–54;

3. Fourteenth Amendment substantive due process and equal protection claims on behalf of "Viable Unborn Children," id. ¶ 255, alleging that the Defendants, in enacting the RHA, have "illegally discriminated against vulnerable viable unborn children," id. ¶ 277, and have denied them their "fundamental rights" to "life, liberty, equal protection, autonomy, dignity, and justice," id. ¶ 278;

4. A First Amendment claim on behalf of "Viable Unborn Children," id. ¶ 279, alleging that Penal Law § 125.05, as amended by the RHA, violates their right to legal redress, id. ¶¶ 279–89;

5. A Fourteenth Amendment substantive due process claim on behalf of "Abortion Survivors," id. ¶ 290, alleging that the RHA's "repeal of the second-physician

---

[1] On March 16, 2021, the Court granted Plaintiffs' motions for leave to file anonymously under these pseudonyms in connection with the Original Complaint. Dkt. No. 37.

requirement" for abortions after viability violates their right to freedom from state-created danger, including death, see id. ¶¶ 290–97;

6. A Fourteenth Amendment equal protection claim on behalf of "Abortion Survivors," id. ¶ 298, alleging that Defendants' failure to ensure proper reporting of live births resulting from attempted abortions after viability violates their right to equal protection under the law, see id. ¶¶ 298–318; and

7. Two Fourteenth Amendment due process claims on behalf of Dr. Amy Moe and other similarly situated physicians, alleging that two provisions of New York's Public Health Law, as amended by the RHA, are void for undue vagueness, see id. ¶¶ 319–52.

On March 12, 2021, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 35. On October 26, 2021, this Court dismissed the first two counts for failure to state a claim, and the remaining causes of action for lack of standing. See Dismissal Order. The Court then entered Judgment in Defendants' favor. See J.

After Judgment was entered, Plaintiffs filed several post-judgment motions, the history of which is recounted in detail in the Court's September 2022 Order. See Sept. 2022 Order at 2–5. In the first set of post-judgment motions, Plaintiffs sought to reopen and amend the Judgment pursuant to Rule 59(e), and to file a proposed amended complaint (the "Original PAC") pursuant to Rule 15(a)(2). See Dkt. No. 61. While those post-judgment motions were still pending, the Supreme Court overruled Roe v. Wade, 410 U.S. 113 (1973), and Planned Parenthood v. Casey, 505 U.S. 833 (1992), and "returned" "the authority to regulate abortion . . . to the people and their elected representatives." Dobbs, 142 S. Ct. at 2279. According to Plaintiffs, the Dobbs decision greatly "impact[ed]" their first set of post-judgment motions, "as well as the case

generally, in . . . significant ways." Dkt. No. 78 at 1, 4. Therefore, Plaintiffs abandoned their

Original PAC, see Sept. 2022 Order at 7–8, and filed a second set of post-judgment motions—

i.e., the Post-Dobbs Motions—to facilitate the filing of an updated proposed amended complaint

(the "Post-Dobbs PAC") that, among other things, "incorporate[d] revised and additional claims

to reflect the changed constitutional boundaries after Dobbs . . . ." Dkt. No. 80-2 ¶ 25.

      Given the increasing complexity of the post-judgment litigation in the wake of Dobbs, the

Court issued the September 2022 Order to clarify what remained at issue in the post-judgment

litigation, and to set deadlines for Defendants' response, and Plaintiffs' reply, to the Post-Dobbs

Motions. See generally Sept. 2022 Order. In the same Order, the Court also denied Plaintiffs'

request from the first set of motions to reinstate Counts Three and Four, which brought

Fourteenth Amendment and First Amendment claims on behalf of "Viable Unborn Children."

Plaintiffs suggested that the Court's dismissal of those counts was in error, but the Court rejected

Plaintiffs' attempt to relitigate standing because Plaintiffs could have raised their novel standing

argument before the decision on the motion to dismiss issued. See id. at 10–11 (citing Bannister

v. Davis, 140 S. Ct. 1698, 1703 (2020), and Slattery v. Clinton, No. 96-CV-2366, 1997 WL

291868, at *1 (S.D.N.Y. June 2, 1997)).

      After the Court granted Defendants an extension to oppose to the Post-Dobbs Motions,

Defendants filed their Response on October 11, 2022. Dkt. No. 86 ("Defendants' Response").

The following week, Plaintiffs filed their Reply. Dkt. No. 87 ("Plaintiffs' Reply").

## III.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 15(a)(2)

      "In the ordinary course, the Federal Rules of Civil Procedure provide that courts 'should

freely give leave' to amend a complaint 'when justice so requires.'" Williams v. Citigroup Inc.,

659 F.3d 208, 212 (2d Cir. 2011) (quoting Fed. R. Civ. P. 15(a)(2)). "This permissive standard is

consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'"

Williams, 659 F.3d at 212–13 (quoting New York v. Green, 420 F.3d 99, 104 (2d.Cir.2005)).

The Supreme Court has further instructed:

> If the underlying facts or circumstances relied upon by a plaintiff
> may be a proper subject of relief, he ought to be afforded an
> opportunity to test his claim on the merits. In the absence of any
> apparent or declared reason—such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to
> the opposing party by virtue of allowance of the amendment, futility
> of amendment, etc.—the leave sought should, as the rules require,
> be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962) (citation omitted). "Futility is a determination, as a

matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim

under Rule 12(b)(6) . . . ." Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 224–25 (2d Cir.

2017) (quoting Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir.

2012)). To assess whether an amended complaint would state a claim, courts consider "the

proposed amendment[s] . . . along with the remainder of the complaint," Starr v. Sony BMG

Music Entm't, 592 F.3d 314, 323 n.3 (2d Cir. 2010), cert. denied, 562 U.S. 1168 (2011),

accepting as true all non-conclusory factual allegations therein, and drawing all reasonable

inferences in the plaintiff's favor, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"It is well established that a party seeking to file an amended complaint post-judgment

must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)."

Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 142 (2d Cir. 2020) (cleaned

up). "[I]t would be contradictory to entertain a motion to amend the complaint" without "a valid

basis to vacate the previously entered judgment." Nat'l Petrochemical Co. of Iran v. M/T Stolt

Sheaf, 930 F.3d 240, 245 (2d Cir. 1991). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." Williams, 659 F.3d at 212 (brackets and internal quotation marks omitted) (quoting Nat'l Petrochemical, 930 F.2d at 245).

### B.   Federal Rule of Civil Procedure 59(e)

Rule 59(e) provides that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Rule 6(b)(2) prohibits district courts from "extend[ing] the time to act" under Rule 59(e). Fed. R. Civ. P. 6(b)(2). "The filing of a Rule 59(e) motion within the 28-day period 'suspends the finality of the original judgment' for purposes of an appeal." Bannister, 140 S. Ct. at 1703 (citation omitted).

A court may grant a Rule 59(e) motion "only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

"[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued." Banister, 140 S. Ct. at 1703; see also Slattery, 1997 WL 291868, at *1. "By contrast, courts may consider new arguments based on an 'intervening change in controlling law' and 'newly discovered or previously unavailable evidence.'" Bannister, 140 S. Ct. at 1703 n.2 (citing 11 C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. § 2810.1, 161–62 (3d ed. 2012)). When a previously rejected legal theory takes on new significance due to an intervening development in the law, courts may exercise discretion to

6

allow a party to revive that theory pursuant to Rule 59(e). See, e.g., Bryant v. New Jersey Dep't of Transp., 998 F. Supp. 438, 440–43 (D.N.J. 1998) (reversing a prior dismissal for lack of standing "in light of" a Supreme Court decision "revisit[ing] the zone of interests test").

With respect to filing an amended complaint post-judgment, the Second Circuit has also found that "it is an abuse of discretion to deny a motion under Rule 59(e)—to prevent a 'manifest injustice,' . . . —when the plaintiff was never given an opportunity to replead in the first place." Metzler, 970 F.3d at 144 (interpreting Foman, 371 U.S. 178).

### C.  Federal Rule of Civil Procedure 60(b)

Rule 60(b) provides that a court may relieve a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). "[A] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." Pastor v. P'ship for Children's Rts., 856 F. App'x 343, 345 (2d Cir. 2021) (summary order) (citing Zerman v. Jacobs, 751 F.2d 82, 84–85

(2d Cir. 1984)). And unlike in the Rule 59(e) context, "a Rule 60(b) motion 'does not affect the [original] judgment's finality or suspend its operation.'" Bannister, 140 S. Ct. at 1710 (brackets in original) (quoting Fed. R. Civ. P. 60(c)(2)).

The Supreme Court has found that "[a]s a matter of text, structure, and history . . . a 'mistake' under Rule 60(b)(1) includes a judge's errors of law." Kemp v. United States, 142 S. Ct. 1856, 1861–62 (2022). Such errors need not be "obvious legal mistakes . . . ." Id. at 1862 (internal quotation marks omitted). "[C]ourts have [also] long found that excusable neglect may involve legal error." Id. at 1863 (collecting cases). "And [courts] have a similar history of granting relief based on '*judicial* inadvertence.'" Id. (emphasis in original) (quoting Larson v. Heritage Square Assocs., 952 F.2d 1533, 1536 (8th Cir. 1992), and citing O'Tell v. New York, N.H. & H.R. Co., 236 F.2d 472, 475 (2d Cir. 1956)).

As for Rule 60(b)(6), the Second Circuit has described that subsection as "a catch-all provision that 'is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule.'" Metzler, 970 F.3d at 143 (quoting Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986)). "[A] change in decisional law rarely constitutes the 'extraordinary circumstances' required to prevail on a Rule 60(b)(6) motion." Stevens v. Miller, 676 F.3d 62, 69 (2d Cir. 2012) (citations omitted).

With respect to filing an amended complaint post-judgment, "it might be appropriate in a proper case to take into account the nature of [a] proposed amend[ed] [complaint] in deciding whether to vacate the previously entered judgment[]" under this catch-all provision codified at Rule 60(b)(6). Metzler, 970 F.3d at 145 (quoting Nat'l Petrochemical, 930 F.3d at 245).

## IV.    DISCUSSION

### A.  Timeliness of the Post-Dobbs Motions

Defendants do not contest the timeliness of the Post-Dobbs Motions in their October 11, 2022, Response. See Defs.' Resp. However, the Court undertakes this timeliness analysis sua sponte because courts lack the "power to extend the time" to file motions pursuant to Rules 59(e) and 60(b), see Lichtenberg v. Besicorp Group Inc., 204 F.3d 397, 401, 404 (2d Cir. 2000) (interpreting the jurisdictional significance of Fed. R. Civ. P. 6(b)).

The Court entered Judgment on October 26, 2021. See J. Twenty-eight days later, Plaintiffs filed motions pursuant to Rule 59(e) and Rule 15(a)(2) to reopen the Judgment to facilitate the filing of the Original PAC. See Dkt. No. 61. Then, before the Court issued a decision on the first set of motions, Plaintiffs filed their second set of post-judgment motions— i.e., the Post-Dobbs Motions—on August 19, 2022, nearly ten months after the Court entered Judgment. See Notice of Mot. Plaintiffs and the Court have identified Rule 59(e), Rule 60(b)(1), and Rule 60(b)(6) as the purported bases for hearing the Post-Dobbs Motions after Judgment was entered. See Notice of Mot.; Dkt. No. 80-5 ("Plaintiffs' Rules 60(b) and 15(a)(2) Memorandum"); Sept. 2022 Order at 5–7, 12 (construing the "Substitution Motion," Dkt. No. 80-1, as a renewed Rule 59(e) motion).

To determine whether a court has the power to entertain a Rule 60(b)(1) motion, a court must ask whether the movant filed the motion before "a year after the entry of the judgment," and "within a reasonable time . . . ." Fed. R. Civ. P. 60(c)(1). Courts in the Second Circuit "have recognized 18 months as a 'reasonable time' for bringing a Rule 60(b)(6) motion, and have required parties who delayed for more than 18 months, but not less, to demonstrate good cause for the delay." Wright v. Poole, 81 F. Supp. 3d 280, 290 (S.D.N.Y. 2014). Here, Plaintiffs moved

pursuant to Rule 60(b)(1) within ten months of the entry of the Judgment. Accordingly, Plaintiffs' Rule 60(b)(1) motion is timely. As for whether a court may entertain a Rule 60(b)(6) motion, a court need only ask whether the movant filed it "within a reasonable time . . . ." Fed. R. Civ. P. 60(c)(1). Since Plaintiffs also moved under Rule 60(b)(6) within ten months of the entry of the Judgment, the Court finds that Plaintiffs' Rule 60(b)(6) motion is similarly timely.

As for a motion pursuant to Rule 59(e), a court typically examines whether it was "filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). However, "if two motions to alter or amend are made, the time period for the second motion begins with the court's decision on the first motion." Charles Alan Wright & Arthur R. Miller, 11 Fed. Prac. & Proc. Civ. § 2817 (3d ed.); see, e.g., Agrocomplect, AD v. Republic of Iraq, 262 F.R.D. 18, 21 (D.D.C. 2009). Given that this Court had not issued a decision on the first Rule 59(e) motion when Plaintiffs filed their renewed Rule 59(e) motion after the Dobbs decision, the Court finds that the renewed Rule 59(e) is timely as well.

Given that the Post-Dobbs Motions are timely, the Court proceeds to examine whether Plaintiffs are entitled to the relief requested therein.

### B.  Motion to Vacate the Judgment Pursuant to Rule 60(b)(1)

In the Post-Dobbs Motions, Plaintiffs have renewed their earlier Rule 59(e) argument that the Court erroneously "dismissed two claims without considering an alternative basis for standing, which resulted in the dismissal of the Medically-Viable Unborn Children Class' Counts Three and Four." Pl.'s Rules 60(b) & 15(a)(2) Mem. at 12. But this time, they fashion their request to reinstate Counts Three and Four through the lens of Rule 60(b)(1), which permits a district court to "correct its own mistakes that are 'of a substantive legal nature,' and 'its own mistake[s] of fact.'" Id. at 18.

10

Much of this request recycles an argument that the Court already rejected in the September 2022 Order. For instance, in the original Rule 59(e) motion, Plaintiffs argued that that the denial of next friend appointment should not have precluded this Court from finding that "the minors comprising the Viable Unborn Children" class have standing to pursue constitutional claims directly in federal court. Dkt. No. 61-1 at 18–21. That is because, according to Plaintiffs' counsel, they directly "represent . . . the minors comprising the Viable Unborn Children" class. Id. at 19. However, the Court rejected this argument. See Sept. 2022 Order at 9–12. Plaintiffs advance a substantially similar argument in the present Rule 60(b)(1) motion. Compare Pl.'s Rules 60(b) & 15(a)(2) Mem. at 19–21, with Dkt. No. 61-1 at 18–21. But as noted earlier, "a Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." Pastor, 856 F. App'x at 345 (citing Zerman, 751 F.2d at 84–85). Accordingly, the Court denies the Rule 60(b)(1) motion insofar as Plaintiffs seek to reinstate Counts Three and Four from the Original Complaint due to an alleged error in the Court's standing analysis.

Plaintiffs separately advocate for vacating the Judgment pursuant to Rule 60(b)(1) because of Dobbs, since "[a] change in decisional law has also been recognized as 'very special facts' and grounds for vacation of a judgment pursuant to [that] Rule . . . ." Pl.'s Rules 60(b) & 15(a)(2) Mem. at 21. Plaintiffs rely on Tarkington v. United States Lines Co., where the Second Circuit in 1955 granted a motion under Rule 60(b) "to correct a mistake of the court[]" where the trial judge had directed a verdict under then-applicable law that was overturned by the Supreme Court just eleven days after judgment was entered, and where a motion to vacate was made just ten days thereafter. 222 F.2d 358, 359–60 (2d Cir. 1955). However, the Tarkington court never explicitly referenced subsection (1) in its very limited analysis. See id. And while the Second Circuit interpreted Tarkington as applying to Rule 60(b)(1) in 1964, see Schildhaus v. Moe, 335

F.2d 529, 531 (2d Cir. 1964), the Second Circuit has more recently indicated that "a change in decisional law" after judgment is entered is more appropriately construed as "an extraordinary circumstance" possibly warranting relief under Rule 60(b)(6), see United Airlines, Inc. v. Brien, 588 F.3d 158, 175–76 (2d Cir. 2009). So too has Justice Sotomayor. See Kemp, 142 S. Ct. at 1865 (Sotomayor, J., concurring) ("I join the Court's opinion with the understanding that nothing in it casts doubt on the availability of Rule 60(b)(6) to reopen a judgment in extraordinary circumstances, including a change in controlling law." (collecting cases)). Even when district courts in this Circuit have applied Rule 60(b)(1) to analyze whether a post-judgment change in the law warranted relief, they have still emphasized that relief may only be granted "upon a showing of exceptional circumstances," which closely tracks the analysis courts engage in when analyzing a motion brought pursuant to the catch-all provision of Rule 60(b)(6). See, e.g., CIT Bank, N.A. v. Zisman, No. 17-CV-2126, 2022 WL 17400908, at *3–5 (E.D.N.Y. Nov. 16, 2022) (emphasizing that relief under Rule 60(b)(1) for a post-judgment change in the law could only be granted "upon a showing of exceptional circumstances" (quoting Nemaizer, 793 F.2d at 63)).

Given the above, the Court will address Plaintiffs' request to vacate the Judgment in light of Dobbs by applying Rule 60(b)(6), as opposed to Rule 60(b)(1). It strains credulity that the ordinary meaning of the term "mistake" in Rule 60(b)(1) would encompass this Court's failure to anticipate Dobbs in October 2021, when it entered Judgment in this case. Cf. CIT Bank, 2022 WL 17400908, at *5 (noting that "it strains credulity that the ordinary meaning of the term 'mistake' in Rule 60(b)(1) would encompass [the court] failing to address an issue never raised" by the parties before judgment was entered (cleaned up)).

### C. Motion to Reopen or Vacate the Judgment Due to a Change in Controlling Law and Extraordinary Circumstances Under Rule 59(e) and Rule 60(b)(6)

Plaintiffs contend that the <u>Dobbs</u> decision itself constitutes a "change in controlling law" and "an extraordinary circumstance" warranting vacation of the Judgment. <u>See</u> Pl.'s Rules 60(b) & 15(a)(2) Mem. at 12–17; Dkt. No. 80-1 at 15. According to Plaintiffs, "[t]he Supreme Court's decision in <u>Dobbs</u> eliminated what had previously been regarded as a fundamental right, destroyed the foundation for the New York's RHA [which sought to protect the rights identified in <u>Roe</u>, 410 U.S. 113], and otherwise reshaped the constitutional contours around which Plaintiffs have shaped their suit." Pl.'s Rules 60(b) & 15(a)(2) Mem. at 12.

Defendants respond that "[c]ontrary to Plaintiffs' assertions":

> <u>Dobbs</u> does not impact the constitutional matters implicated in this litigation and does not strengthen Plaintiffs' claims in any way. It is undisputed that the Supreme Court's decision in <u>Dobbs</u> is a landmark decision in which the Court held that the United States Constitution does not confer a right to obtain an abortion and overruled <u>Roe v. Wade</u> and <u>Planned Parenthood v. Casey</u>, to that extent. However, what is absent from Plaintiffs' papers is that the Supreme Court also held in <u>Dobbs</u> that the individual states have full power to regulate abortion, which is precisely what the RHA does. And . . . the New York State Legislature passed the RHA in 2019 which enacted into state law a statutory protection for abortion as a state-recognized fundamental right.

Defs.' Resp. at 9–10 (citations omitted). Defendants add:

> While it is true, as Plaintiffs point out repeatedly in their motion papers, that . . . Defendants cited to <u>Roe v. Wade</u> and <u>Planned Parenthood v. Casey</u> in their motion to dismiss as well as in their opposition papers to Plaintiffs' original motions under Rule 59(e) and Rule 60(b), those citations were not determinative of Defendants' arguments. . . . [T]he subsequent rescinding of [federal constitutional] right [to obtain an abortion without undue interference from the government] does not change the underlying issue here: that New York has the right to legislate such a right, and it has done so. Nothing about <u>Dobbs</u> affects New York's ability to protect reproductive rights by a statute like the RHA; in fact, <u>Dobbs</u> specifically holds that it can do so.

Defs.' Resp. at 10 (citation omitted).

While the Court agrees with Plaintiffs that <u>Dobbs</u> represents a "seismic constitutional shift," Dkt. No. 78 at 4, the Court cannot agree with them that <u>Dobbs</u> represents a change of controlling law that would have warranted a different outcome in the Judgment. Notably, the Court's October 26, 2021, Dismissal Order does not cite to <u>Roe</u> at all, <u>see</u> Dismissal Order, and only cites to <u>Casey</u> *once* for its dicta that "[m]en and women of good conscience can disagree, and we suppose some always shall disagree, about the profound moral and spiritual implications of terminating a pregnancy," <u>see</u> Dismissal Order at 1 (brackets in original) (quoting 505 U.S. at 850). In fact, the <u>Dobbs</u> majority cited positively to that very same <u>Casey</u> dicta this Court relied on in the Dismissal Order, observing that "even . . . <u>Casey</u> did not question the good faith of abortion opponents," <u>Dobbs</u>, 142. S. Ct. at 2256 (("Men and women of good conscience can disagree . . . about the profound moral and spiritual implications of terminating a pregnancy even in its earliest stage") (quoting <u>Casey</u>, 505 U.S. at 850)).

While the <u>Dobbs</u> decision certainly overruled the core holding of <u>Casey</u> by stripping people of their federal right to sue in courts of the United States to stop the government from unduly burdening their ability to obtain an abortion, <u>see</u> <u>Dobbs</u>, 142 S. Ct. at 2242, the <u>Dobbs</u> decision did not impose any affirmative obligation on state governments to prohibit abortion. As Defendants correctly point out, the Supreme Court's holding in <u>Dobbs</u> expressly relegated the authority to regulate or prohibit abortion to state governments, <u>see</u> <u>id.</u> at 2279, 2284. And the <u>Dobbs</u> majority, in dicta, clearly noted that its "opinion is not based on any view about if and when prenatal life is entitled to any of the rights enjoyed after birth." <u>Id.</u> at 2261. Therefore, Plaintiffs' contention that <u>Dobbs</u> has made available "a broader and more robust cause of action"

for the class of "Viable Unborn Children" to assert, Pl.'s Rules 60(b) & 15(a)(2) Mem. at 23, is without merit, and plainly misreads <u>Dobbs</u>.

Plaintiffs' related argument that the <u>Dobbs</u> majority "recogni[zed] that there is something different about cases involving an unborn human being," <u>id.</u> at 24 (citing <u>Dobbs</u>, 142 S. Ct. at 2236–37, 2243, 2256–58), does not change the Court's analysis on the above point. Contrary to Plaintiffs' argument, the majority's recognition that state governments have "legitimate interests" in the "respect for and preservation of prenatal life at all stages of development," <u>Dobbs</u>, 142 S. Ct. at 2284 (citing <u>Gonzales v. Carhart</u>, 550 U.S. 124, 157–58 (2007)), says nothing about the applicability of the Fourteenth Amendment's Due Process and Equal Protection Clauses to prenatal life. Rather, the statement merely conveys the majority's position that "preserv[ing] . . . prenatal life at all stages of development" is a legitimate exercise of state governments' police power. <u>Dobbs</u>, 142 S. Ct. at 2284; <u>see generally</u> U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."); <u>Jacobson v. Commonwealth of Massachusetts</u>, 197 U.S. 11, 24–25 (1905) ("The authority of the state to enact [a] statute is . . . commonly called the police power—a power which the state did not surrender when becoming a member of the Union under the Constitution."). Nowhere in <u>Dobbs</u> does the majority hold—or even suggest in dicta—that prenatal life qualifies as "persons" under the Fourteenth Amendment. <u>See Dobbs</u>, 142 S. Ct. 2228.

The Court need not analyze the remainder of Plaintiffs' arguments concerning the impact of <u>Dobbs</u> on this case in more detail. It is abundantly clear to this Court that even if <u>Dobbs</u> had been issued before the Court's October 26, 2021, Dismissal Order, the Court would have reached the same result. The Court's determination that Count One failed to state a claim because the

alleged conduct did not "fall[] under the ambit of th[e] state-created danger exception," Dismissal Order at 13, would not have changed in the wake of <u>Dobbs</u>—a decision which has no bearing on that particular doctrine. <u>See generally</u> Dismissal Order at 11 (finding that "[t]he state-created danger exception requires some form of affirmative, rather than passive, conduct on the part of a government actor that communicates, explicitly or implicitly, official sanction of private violence" (internal quotation marks omitted)). Nor would the Court's determination that Count Two failed to state a claim have changed. <u>See id.</u> at 14, 16 (reasoning that "a private citizen does not have a constitutional right to bring a criminal complaint against another individual," and that "Plaintiffs [did not allege that they] experience[d] a . . . wholesale denial of judicial relief"). <u>Dobbs</u> does not abrogate any of the authorities the Court relied on in reaching either determination with respect to Counts One and Two. As for the remaining counts in the Original Complaint, the Court dismissed them for lack of Article III standing, and Plaintiffs have not demonstrated how <u>Dobbs</u> would have necessarily changed those determinations as well. <u>See</u> Dismissal Order at 16–20.

Accordingly, the Court denies the Rule 59(e) and Rule 60(b)(6) motions insofar as Plaintiffs seek to reopen and vacate the Judgment on the ground that the <u>Dobbs</u> decision itself constitutes a "change in controlling law" and "an extraordinary circumstance" warranting a different outcome in the Judgment.

### D.  Motion to Reopen or Vacate the Judgment Pursuant to File the Post-<u>Dobbs</u> PAC Under Rule 15(a)(2), Rule 59(e), and Rule 60(b)(6)

Finally, Plaintiffs argue that since they "never had the opportunity to amend their Complaint[]" before Judgment was entered, the Court should reopen the case to honor "the liberal spirit of Rule 15" by allowing at least one amendment in the form of the Post-<u>Dobbs</u> PAC. Pl.'s Rules 60(b) & 15(a)(2) Mem. at 10, 23. Plaintiffs also contend that the Court should

permit amendment now so that the Court may decide the merits of their post-<u>Dobbs</u> claims on a dispositive motion rather than on a motion to amend. Dkt. No. 80-1 at 16.

Anticipating Defendants' futility arguments, Plaintiffs add that "none of the grounds traditionally used to deny . . . a request [to amend]," such as "futility . . . are present" here. Dkt. No. 80-1 at 12–13. Central to their contention that the Post-<u>Dobbs</u> PAC is not futile is the <u>Dobbs</u> decision itself, which they claim has "augmented . . . the constitutional grounds for the instant lawsuit . . . ." Pl.'s Rules 60(b) & 15(a)(2) Mem. at 24. Plaintiffs also argue against futility because various purported improvements in the Post-<u>Dobbs</u> PAC cure the pleading deficiencies this Court identified in the Original Complaint. <u>Id.</u> at 25–26; Dkt. No. 80-1 at 10, 13.

In their Response, Defendants emphasize that "a successful motion to vacate the Judgment is a pre-requisite to Plaintiffs' motion for leave to file" the Post-<u>Dobbs</u> PAC, Defs.' Resp. at 7, and that Plaintiffs—regardless of the contents of the Post-<u>Dobbs</u> PAC—"fail to satisfy the demanding standards of Rules 59(e) or 60(b)," <u>id.</u> at 9. Even if Plaintiffs were to satisfy those "demanding standards," Defendants argue that the Court should still deny leave to amend on the grounds of "futility" and "undue delay." <u>Id.</u> at 14–21. In addition, Defendants urge the Court not to reopen the Judgment simply to determine the merits of the Post-<u>Dobbs</u> PAC in a future round of dispositive briefing, precisely because the Post-<u>Dobbs</u> PAC is futile. <u>Id.</u> at 14.

The Court begins its analysis on amendment by addressing Plaintiffs' threshold argument that it would be better to litigate the merits of the Post-<u>Dobbs</u> PAC on a dispositive motion after amendment is allowed, rather than through the backdoor of futility. While this Court has granted motions for leave to amend for this very reason, <u>see, e.g.</u>, <u>Fletcher v. Vill. of Lake Placid</u>, No. 22-CV-00314, 2023 WL 2456066, at *3 (N.D.N.Y. Mar. 10, 2023) (Kahn, J.) ("declin[ing] to decide the merits of defendants' futility arguments at this juncture[]" and thus "grant[ing] the

plaintiff's motion to amend without addressing the merits" (internal quotation marks omitted));

Phoenix of Albany, LLC v. Cnty. of Albany, No. 22-CV-0577, 2023 WL 1861530, at *3

(N.D.N.Y. Feb. 9, 2023) (Kahn, J.) (same); the post-judgment context is necessarily different.

The mere fact that Judgment has already been entered cautions against reopening the case to

permit amendment, especially if it is clear to the Court that the amendment is futile. See

generally Williams, 659 F.3d at 212 (emphasizing "the philosophy favoring finality of judgments

and the expeditious termination of litigation[]" when a party seeks to amend post-judgment

(brackets and internal quotation marks omitted)).

　　　Furthermore, the concern about affording a plaintiff at least one opportunity to rebut a

defendant's futility arguments—when raised on the first time in opposition to a plaintiff's cross-

motion to amend (in response to a defendant's prior motion to dismiss)—is plainly inapplicable

here. Cf. Phoenix, 2023 WL 1861530, at *3 (observing that "as a matter of fairness . . . courts . . .

have declined to address [futility] arguments raised for the first time [in opposition to a cross-

motion to amend] that a plaintiff could not respond to[]" under the Local Rules). In their

Response to the Post-Dobbs Motions, Defendants raised their futility arguments, Defs.' Resp. at

14–21, and Plaintiffs had an opportunity to rebut them in their Reply, Pl.'s Reply at 9–11.

Accordingly, the Court will not reopen or vacate the Judgment solely on the ground that

litigating the merits of the Post-Dobbs PAC is better suited to dispositive briefing on a motion to

dismiss.

　　　Next, the Court addresses the proper standard to apply to Plaintiffs' request to reopen or

vacate the Judgment on the ground that they "never had the opportunity to amend their

Complaint[]" before Judgment was entered. Pl.'s Rules 60(b) & 15(a)(2) Mem. at 10. While

Defendants are technically correct that "a successful motion to vacate the Judgment is a pre-

requisite to Plaintiffs' motion for leave to file" the Post-<u>Dobbs</u> PAC, Defs.' Resp. at 7; <u>see</u>

<u>Metzler</u>, 970 F.3d at 142 ("[A] party seeking to file an amended complaint post-judgment must

first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)."); in

practice, the order of operations is not so clear-cut. For instance, the Second Circuit in <u>Metzler</u>

interpreted the Supreme Court's decision in <u>Foman</u>, 371 U.S. 178, to mean "that it is an abuse of

discretion to deny a motion under Rule 59(e)—to prevent a 'manifest injustice,' although the

[Supreme] Court did not say so explicitly—when the plaintiff was never given an opportunity to

replead in the first place." <u>Metzler</u>, 970 F.3d at 144 (interpreting <u>Foman</u>, 371 U.S. 178).

Therefore, "it might be appropriate in a proper case to take into account the nature of [a]

proposed amend[ed] [complaint] in deciding whether to vacate the previously entered

judgment[]" under Rule 60(b)(6). <u>Metzler</u>, 970 F.3d at 145 (quoting <u>Nat'l Petrochemical</u>, 930

F.3d at 245). Accordingly, "even when a plaintiff has not had [even] one . . . opportunity [to

amend before judgment], a district court may properly deny her post-judgment motion for leave

to amend if her proposed amendments would be futile." <u>Shull v. TBTF Prods., Inc.</u>, No. 20-3529,

2021 WL 3027181 (2d Cir. July 19, 2021) (summary order) (citing <u>Williams</u>, 659 F.3d at 214).

Here, the Court entered Judgment before Plaintiffs could seek leave to file an amended

complaint. Because Plaintiffs were "never given an opportunity to replead in the first place,"

<u>Metzler</u>, 970 F.3d at 144, the Court will therefore examine the "nature of the [Post-<u>Dobbs</u> PAC]

in deciding whether to vacate the previously entered [J]udgment," <u>id.</u> at 145, whether that be

under Rule 59(e) or Rule 60(b)(6).

     *1. Counts One and Two*

Counts One and Two in the Post-<u>Dobbs</u> PAC are virtually identical to Counts One and

Two in the Original Complaint. <u>Compare</u> Dkt. No. 80-4 ("Post-<u>Dobbs</u> PAC") ¶¶ 263–78, <u>with</u>

Original Compl. ¶¶ 238–54. The Court previously dismissed those counts for failure to state a

claim. See Dismissal Order at 11–16. And as the Court noted earlier in this opinion, Dobbs does

not alter the Court's analysis with respect to either of those counts. See supra Section IV.C.

      Apart from the impact of Dobbs, Plaintiffs argue that "[t]he Post-Dobbs PAC addresses

the Court's concerns with respect to Counts One and Two by including additional allegations

relating to state action." Pl.'s Rules 60(b) & 15(a)(2) Mem. at 8. Plaintiffs claim that:

> Plaintiffs Smith and Park now include allegations that, among other
> things: lethal attacks against women have escalated since the RHA,
> the Bail Reform Law, and other policies were put in place by New
> York; that the release of these offenders under New York's recently-
> enacted Bail Reform law [that went into effect on January 1, 2020]
> disproportionately impacts women; that Defendants knew or should
> have known that the elimination of deterrence brought about by the
> RHA, the decriminalization of killing of Medically-Viable Unborn
> Children, New York's Bail Reform Law and other policies are
> reckless, unfounded and irrational, and serve only to remove an
> important source of protection for women and Medically-Viable
> Unborn Children.

Id. at 8–9 (citation omitted).

      Defendants counter that "these additional allegations in the Post-Dobbs PAC do not

undermine the Court's conclusion that the enactment and notification of the RHA does not

constitute a state-created danger within the meaning of that legal theory to sustain the due

process claim in Count [One]." Defs.' Resp. at 15 (citing Dismissal Order at 11–12). "Likewise,

they do not undermine the Court's conclusion that the inability to file specified criminal charges

does not affect the constitutional right to legal redress alleged in Count [Two] or change the fact

that other criminal charges are still available for the specified conduct." Defs.' Resp. at 15–16

(citing Dismissal Order at 13–16).

      The Court agrees with Defendants. With respect to the newly stated Count One, which

seeks to hold Defendants liable for allegedly creating threats of violence against Jane Smith, Jill

Park, and other similarly situated women by enacting the RHA, the Bail Reform Law, and other related policies, Post-<u>Dobbs</u> PAC ¶¶ 263–68, Plaintiffs have still failed to demonstrate that "Defendants condoned violence against pregnant women," Dismissal Order at 12. Plaintiffs have failed to provide the Court with any authority suggesting that the state-created danger exception under the Fourteenth Amendment is satisfied where state officials enact laws and policies that they subjectively believe advance the interests of the citizenry but the consequences of those laws have deleterious effects. <u>See</u> Pl.'s Rules 60(b) & 15(a)(2) Mem. at 8–9 (failing to provide any case law supporting Plaintiffs' argument that these new allegations satisfy the state-created danger exception); <u>see generally</u> Dismissal Order at 11 (finding that "[t]he state-created danger exception requires some form of affirmative, rather than passive, conduct on the part of a government actor that communicates, explicitly or implicitly, official sanction of private violence" (internal quotation marks omitted)). Plaintiffs' argument that Defendants "knew or should have known" of these negative consequences when enacting the RHA and New York's Bail Reform Law is not nearly enough.

As for Count Two, which seeks to hold Defendants liable for allegedly depriving Jane Smith, Jill Park, and other similarly situated women of their right to legal redress, by enacting the RHA, the Bail Reform Law, and other related policies, Post-<u>Dobbs</u> PAC ¶¶ 269–78, these new allegations also fail to cure the pleading deficiencies identified in the Original Complaint, Dismissal Order at 13–16. It remains the case that "a private citizen does not have a constitutional right to bring a criminal complaint against another individual." <u>Id.</u> at 14. Moreover, in these new allegations, Plaintiffs have still failed to allege that they "experience[d] a . . . wholesale denial of judicial relief." <u>Id.</u> at 16. Accordingly, allowing Plaintiffs to bring Counts One and Two in the Post-<u>Dobbs</u> PAC would be futile.

2.  *Counts Three, Four, and Five*

Counts Three, Four, and Five in the Post-Dobbs PAC are broadly similar to Counts Three and Four in the Original Complaint, except the following differences should be noted:

- Plaintiffs have proposed new "co-next friends" to represent the "Viable Unborn Children" bringing Counts Three, Four, and Five in the Post-Dobbs PAC. Compare Post-Dobbs PAC ¶¶ 279–316, with Original Compl. ¶¶ 255–89.

- In the Original Complaint, Count Three contained both substantive due process and equal protection claims on behalf of "Viable Unborn Children," Original Compl. ¶ 255, but in the Post-Dobbs PAC, Plaintiffs have separated them into two separate counts, categorizing the substantive due process claims as Count Three, Post-Dobbs PAC ¶¶ 279–98, and the equal protection claims as Count Four, id. ¶¶ 299–306.

- In the Original Complaint, Count Four stated a "right to legal redress" claim on behalf of "Viable Unborn Children," Original Compl. ¶¶ 279–89, which now appears as Count Five in the Post-Dobbs PAC, Post-Dobbs PAC ¶¶ 307–316.

- With respect to the substantive due process claims that appear as Count Three in the Post-Dobbs PAC, Plaintiffs have provided new legal arguments to support them in light of Dobbs, 142 S. Ct. 2228. Compare Post-Dobbs PAC ¶¶ 280–82, with Original Compl. ¶¶ 255–71.

- However, the legal analysis in support of the equal protection and "right to legal redress" claims (i.e., Counts Four and Five in the Post-Dobbs PAC) is substantially similar to what appeared in the Original Complaint. Compare Post-Dobbs PAC ¶¶ 299–316, with Original Compl. ¶¶ 272–89.

The Court previously dismissed the broadly similar claims brought on behalf of "Viable Unborn Children" for lack of Article III standing because the Court had previously "declined . . . two appointments to serve as next friend" for the "Viable Unborn Children" named in the Original Complaint. Dismissal Order at 16. Accordingly, to examine whether this threshold standing deficiency has been cured in the Post-<u>Dobbs</u> PAC, the Court must first examine the post-judgment motions to appoint legal representatives or next friends pursuant to Federal Rule of Civil Procedure 17(c)(2). <u>See</u> Dkt. Nos. 61-5 to -6.

To the extent Rachel Brown-Lee and Miriam Brown seek appointment as legal representatives or next friends under Rule 17(c)(2) for "all viable unborn children" affected by the RHA, Dkt. Nos. 61-5 to -6, the Court denies the motions. This broad request suffers from the same defect the Court identified in its August 9, 2021, Text Order denying Plaintiffs' earlier request for next friend appointment under Rule 17(c)(2). Dkt. No. 51 ("agree[ing] with several other Courts of Appeal that have determine that a 'significant relationship' is required" for appointment under Rule 17(c)(2)). Nowhere in the motions do Rachel Brown-Lee and Miriam Brown plausibly allege a "significant relationship" with "all viable unborn children" affected by the RHA. <u>See</u> Dkt. Nos. 61-5 to -6. Therefore, their request to represent "all viable unborn children" as Plaintiffs to this action under Rule 17(c)(2) is denied.

To the extent Rachel Brown-Lee and Miriam Brown seek appointment as legal representatives or next friends for Plaintiff "Baby Nicholas," who in turn would represent the purported class of "Viable Unborn Children" affected by the RHA, Dkt. Nos. 61-5 to -6, the Court need not decide that request to resolve whether stating Counts Three, Four, and Five in the Post-<u>Dobbs</u> PAC would be futile. As Defendants correctly point out, Baby Nicholas is not named as Plaintiff in Counts Three, Four, and Five in the Post-<u>Dobbs</u> PAC. <u>See</u> Defs.' Resp. at 16 n.6

("Although listed in the caption, no claims are alleged within the Post-Dobbs PAC on behalf of 'Baby Nicholas.'"). Even if the Court were to cure that pleading deficiency, Plaintiffs would still run into the problem of Article III standing with respect to these claims.

"Demonstrating that the defendant's allegedly unlawful conduct caused injury to the plaintiff h[im]self is . . . generally an essential component of Article III standing." Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012). The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (citation omitted). Furthermore, "a plaintiff must demonstrate standing for each claim he seeks to press." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 335 (2006). "Thus, *with respect to each asserted claim*, '[a] plaintiff must always have suffered a distinct and palpable injury to [her]self.'" Mahon, 683 F.3d at 64 (alterations and emphasis in original) (quoting Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 100 (1979)). "'That a suit may be a class action . . . adds nothing to the [threshold] question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Lewis v. Casey, 518 U.S. 343, 357 (1979) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)).

Here, the Post-Dobbs PAC is devoid of allegations that "Baby Nicholas" himself was deprived of his alleged substantive due process or equal protection rights by the RHA's loosening of abortion restrictions in New York—the core harm alleged in the new Counts Three and Four. The very nature of this lawsuit suggests otherwise—that the permissibly of abortion

under the RHA had no effect on "Baby Nicholas," because Rachel Brown-Lee was determined to carry her pregnancy to term, and nothing mandated by the RHA forced her to choose otherwise.

The Post-Dobbs PAC is also lacking in any allegations that "Baby Nicholas" was individually deprived of his "right to redress" by the RHA's modification to Section 125.05 of New York's Penal Law—the core harm alleged in the newly stated Count Five. Plaintiffs' allegation that "Baby Nicholas" is therefore "subject to being killed at the hands of a harm-causing individual and if killed ha[s] no right to redress for [his] murder," Post-Dobbs PAC ¶ 31, is far too speculative to satisfy the requirements of Article III standing. See Clapper, 568 U.S. at 409 ("reiterat[ing] that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient" (citation omitted)).

In a final attempt to save the newly stated Counts Three, Four, and Five, Plaintiffs contend that other "viable unborn children," apart from "Baby Nicholas," have standing to pursue those counts, even in the absence of a Rule 17(c)(2) representative. The attorneys for Plaintiffs have even argued that they directly "represent . . . the minors comprising the . . . Viable Unborn Children Class." Pl.'s Rules 60(b) & 15(a)(2) Mem. at at 20. But that argument is without merit, and borders on frivolousness. As noted in the Court's September 2022 Order:

> The federal courts do not allow for a representative free-for-all, especially with respect to children or the unborn, precisely because "[t]he exercise of judicial power . . . can so profoundly affect the lives, liberty, and property of those to whom it extends," Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 473 (1982), including those who may give birth to such children. The decision to seek legal redress on behalf of minors and others who lack capacity "is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." Diamond v. Charles, 476 U.S. 54, 62 (1986) (cleaned up).

Sept. 2022 Order at 11–12. The Court reemphasizes that Plaintiffs' attorneys should refrain from "making [such] broad and perfunctory claims about their representative capacity . . . ." Id. at 11. It is well-established that "[a] mere self-appointed volunteer cannot [unilaterally] usurp authority to bind anyone else by litigation," including "persons unknown or unborn." Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4454 (3d ed.). Plaintiffs' counsel should heed this warning before commencing any additional litigation in the federal courts where they claim to directly represent "viable unborn children" to which they have no significant relationship.[2]

In sum, if the Court allowed for the filing of the Post-Dobbs PAC, the Court would eventually dismiss the newly stated Counts Three, Four, and Five for lack of Article III standing. Accordingly, allowing Plaintiffs to bring those claims in the Post-Dobbs PAC would be futile.

### 3.   Count Five

Plaintiffs have abandoned the claims brought on behalf of "Abortion Survivors" in the Post-Dobbs PAC and have reformulated Count Six as a challenge to three different terms of Section 2599-BB.1 of the New York Public Health Law. In the Original Complaint, Plaintiffs challenged only two terms: (1) "health care practitioner," in that it lacked additional guidance on

---

[2] It should be noted that Plaintiffs filed their Post-Dobbs Motions—reasserting this theory of direct representation—before the Court issued the September 2022 Order. In their Reply, filed after the September 2022 Order, Plaintiffs "acknowledge the Court's [September 2022] ruling with respect to th[is] issue." Pl.'s Reply at 3 n.1. Their attorneys add that they genuinely "believed that they properly raised [their purported direct] legal representation of . . . Medically Viable Unborn Children" in their past papers. Id. While the Court appreciates Plaintiffs' attorneys clarifying that they did not present this theory of direct representation to the Court in bad faith, the Court cautions them that when an opposing party brings a motion for Rule 11 sanctions, "Rule 11 establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384, 392 n.31 (S.D.N.Y. 2007) (quoting Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc., 186 F.3d 157, 166 (2d Cir. 1999)). Cf. In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003) (observing that when courts act sua sponte "to impose [Rule 11] sanctions upon attorneys," they "must be reviewed with 'particular stringency,'" and that "a finding of bad faith on the part of the attorney is essential to a finding of contempt").

who exactly is authorized to perform abortions, Original Compl. ¶ 332; and (2) "health," in that it lacked additional guidance on when exactly an abortion after twenty-four weeks gestation would be "necessary to protect a patient's . . . health," id. ¶ 347. In the Post-Dobbs PAC, Plaintiffs maintain their challenge to those two terms, and newly challenge the "absence of fetal viability" term as unconstitutionally vague. Post-Dobbs PAC ¶ 334.

In the previous Dismissal Order, the Court dismissed the void-for-vagueness claims on Article III standing grounds because "Plaintiff Dr. Moe [did] not sufficiently allege[] a concrete intention to violate the law." Dismissal Order at 20. To remedy this in the Post-Dobbs PAC, Plaintiffs have added:

> a declaration from Dr. Moe that contains her concrete choice as to which definition she would use when asked by clients the definition of "health" for purposes of securing a post-24 week abortion. In addition, Plaintiffs have added [Dr. Lopez as Plaintiff] who share[s] Dr. Moe's concern, and likewise have offered a concrete definition of "health," and professional assessment of measures of "fetal viability," and the clinical competencies of "healthcare providers" to perform post-24 week abortions. Their intended actions consistent with these professional judgments subject them to prosecution or adverse licensure actions by Defendants.

Pl.'s Rule 60(b) & 15(a)(2) Mem. at 25–26 (internal citation omitted).

While these additions address some of the standing concerns identified by the Court in its prior Dismissal Order, such as Plaintiffs' initial failure to allege a more concrete intention to violate the challenged law, see Dismissal Order at 19–21, a key problem remains. Nothing in the Post-Dobbs PAC demonstrates that any enforcement of Public Health Law Section 2599-BB against Plaintiffs Moe or Lopez has been credibly threatened. As the Court previously stated, "[t]o sufficiently allege standing on [a] preenforcement claim, Plaintiff must therefore allege *both* a concrete intention to violate the law *and* the credible threat of prosecution if he were to do so." Dismissal Order at 18–19 (emphasis added) (quoting Adam v. Barr, No. 18-CV-2106, 2019

WL 1426991, at *3 (S.D.N.Y. Mar. 29, 2019), aff'd, 792 Fed. App'x 20 (2d Cir. 2019), cert. denied, 140 S. Ct. 1119 (2020)). Plaintiffs' allegation that "[d]uring the legislative debates preceding the passage of the RHA," a "sponsor of the legislation" argued that medical professionals who were "confused by the text or did not understand his or her role under the RHA should be subjected to disciplinary charges and loss of license[]" is a far cry from a "credible threat of prosecution" by a state executive branch official after its passage. Post-Dobbs PAC ¶ 327.

Given the above, Plaintiffs would not have Article III standing to pursue the newly stated Count Six in the Post-Dobbs PAC. Allowing Plaintiffs to bring Count Six would therefore be futile. Accordingly, the Court denies the Rule 15(a)(2), Rule 59(e), and Rule 60(b)(6) motions insofar as Plaintiffs seek to reopen and vacate the Judgment to file the Post-Dobbs PAC.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Post-Dobbs Motions (Dkt. No. 80) are **DENIED**; and it is further

**ORDERED**, that, insofar as Rachel Brown-Lee and Miriam Brown seek appointment as legal representatives or next friends for "all viable unborn children" affected by the RHA pursuant to Federal Rule of Civil Procedure 17(c)(2), their motions (Dkt. Nos. 61-5 to -6) are **DENIED**; and it is further

**ORDERED**, that, insofar as Rachel Brown-Lee and Miriam Brown seek appointment as legal representatives or next friends for "Baby Nicholas," pursuant to Federal Rule of Civil Procedure 17(c)(2), their motions (Dkt. Nos. 61-5 to -6) are **DENIED as moot**; and it is further

**ORDERED**, that, Plaintiffs' motions for leave to file anonymously (Dkt. Nos. 61-7 to

-10) are **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-

Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:          March 22, 2023
                Albany, New York

LAWRENCE E. KAHN
United States District Judge